**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **PHILLIP CHESTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:22-cv-538-CWB** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     Introduction and Administrative Proceedings**

Phillip Chester ("Plaintiff") filed an application for Supplemental Security Income under Title XVI of the Social Security Act on July 31, 2020 wherein he alleged disability due to schizophrenia and psychosis.  (Tr. 14, 50-51, 77).[1,2]  The claim was denied at the initial level on November 23, 2020 and again after reconsideration on February 18, 2021.  (Tr. 14, 75-77, 79, 102, 104, 110).  Plaintiff then requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 14, 112, 124).  The ALJ heard the case on October 27, 2021, at which time testimony was given by Plaintiff (Tr. 14, 29-42) and by a vocational expert.  (Tr. 42-44).  The ALJ took the matter under advisement and issued a written decision on November 26, 2021 that found Plaintiff not disabled.  (Tr. 14-24).

The ALJ's written decision contained the following enumerated findings:

---

[1] References to pages in the transcript are denoted by the abbreviation "Tr."

[2] Plaintiff's appeal requires a showing of disability between the date of his July 31, 2020 application and the date of the ALJ's November 26, 2021 decision.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

1. The claimant has not engaged in substantial gainful activity since July 31, 2020, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: schizophrenia and borderline intellectual functioning (BIF) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to the performance of simple tasks. He can tolerate frequent interaction with the supervisor and frequent public interaction. The claimant can tolerate occasional changes in a routine work setting. He can have no production rate pace jobs such as assembly line work but can perform goal-oriented work such as that of an office cleaner.

5. The claimant does not have any past relevant work (20 CFR 416.965).

6. The claimant was born on September 3, 1990 and was 29 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 31, 2020, the date the application was filed (20 CFR 416.920(g)).

(Tr. 16, 17, 18, 23, 24).  On August 1, 2022, the Appeals Council denied Plaintiff's request for

review (Tr. 1-6), thereby rendering the ALJ's decision the final decision of the Commissioner.

*See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration. (Doc. 1 at p. 2; Doc. 16 at p. 17). The court finds the case to be ripe for review pursuant to 42 U.S.C. § 405(g); specifically, the court construes Plaintiff's supporting brief (Doc. 16) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 17) as a competing motion for summary judgment. Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.[3]

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Reversal is not warranted

---

[3] As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full jurisdiction by a United States Magistrate Judge. (Docs. 9 & 10).

simply because the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[4] To make such a determination, the ALJ employs a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 & 416.920.

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id.* At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id.* at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id.* at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently

---

[5] *McDaniel* is an SSI case. "[T]he law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.*" Patterson v. Bowen*, 799 F.2d 1455, 1456 (11th Cir. 1986). Therefore, DIB cases arising under Title II are appropriately cited as authority in Title XVI cases, and vice versa. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income."); *Claudia S. v. Saul*, No. 1:18-CV-01896, 2019 WL 3059745, at *1 (N.D. Ga. July 12, 2019) ("Therefore, to the extent that the Court cites to DIB cases, statutes, or regulations, they are equally applicable to Plaintiff's SSI claims, and vice versa.").

limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

## III.    Issues on Appeal

Plaintiff essentially raises three issues on appeal: (1) whether the ALJ properly applied the psychiatric review technique ("PRT") when evaluating Plaintiff's mental impairments and whether the ALJ properly accounted for the PRT findings in assessing his RFC; (2) whether the ALJ properly evaluated the opinions of Daniel C. Clark, Ph.D., Warren G. Brantley, Ph.D. and Joseph Lucas, M.D.; and (3) whether the ALJ properly evaluated Plaintiff's subjective complaints. (Doc. 16 at pp. 5-10, 12).

## III.    Discussion

### A.    Application of the PRT and Accounting of the PRT Findings

Plaintiff argues that the ALJ's mental RFC was not specific enough and that the ALJ should have determined if he "'was able to use each of the paragraph B areas of mental functioning in a work setting.'"  (Doc. 16 at pp. 5-6).  Plaintiff, in essence, is arguing that the record supports a more limited finding than reflected by the RFC and the ALJ's psychiatric review technique analysis ("PRT") and that the ALJ failed to expand on the limitations found in the PRT when determining the RFC.  (*Id*. at p. 10).  In response, the Commissioner contends that the ALJ properly considered the "paragraph B" criteria—finding that Plaintiff had no more than moderate limitations in the four broad functional areas—and that the ALJ properly accounted for the findings in assessing Plaintiff's RFC.  (Doc. 17 at pp. 4-6, 8).

When a claimant has presented a colorable claim of mental impairments, the ALJ is required to complete a Psychiatric Review Technique Form ("PRTF") to evaluate the severity of the mental impairments.  *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005); 20 C.F.R.

§ 416.920a(a).   Applying the PRT, the ALJ must rate how a claimant's mental impairments impact four broad functional areas known as the "paragraph B criteria": "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."   20 C.F.R. § 416.920a(c)(3); *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324 (11th Cir. 2021).   In rating the degree of limitation in each of those areas, the ALJ  utilizes the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4).   "The ALJ must incorporate these results into the findings and conclusions." *Burns v. Comm'r, Soc. Sec. Admin.*, No. 22-11181, 2023 WL 5607883 at *2 (11th Cir. Aug. 30, 2023); 20 C.F.R. § 416.920a(e)(4).   "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of mental impairment(s)" and "must include a specific finding as to the degree of limitation in each of the functional areas described [above]." 20 C.F.R. § 416.920a(e)(4).

"To find the presence of a listing-level mental impairment, the ALJ must find that a claimant has an 'extreme' limitation in one of the four functional areas or a 'marked' limitation in two." *Buckwalter*, 5 F.4th at 1325; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b).  A "mild" limitation indicates that a claimant's functioning is "slightly limited," whereas a "moderate limitation indicates that a claimant's functioning is "fair." *Id*.; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(b), (c).  The ALJ considers all of the relevant medical and non-medical evidence in evaluating a claimant's mental disorder, including information about the claimant's daily activities at home and in the community. *Id*.; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(3)(a)-(b).  "The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four." *Id*.;

*see* also *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (The PRT "is separate from the ALJ's evaluation of the claimant's RFC assessment, the latter of which is an assessment of the claimant's ability to do work despite his impairments. The mental RFC assessment is a more detailed assessment of the claimant's functionality.") (internal citations omitted). "[T]hough the analysis at steps two and three is less detailed, an ALJ is still required to account for a claimant's moderate limitation in the area of concentration, persistence, or pace in a hypothetical posed to the VE." *Buckwalter*, 5 F.4th at 1325.

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 416.945(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036 at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion.").

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). Although an RFC determination must be supported by substantial evidence,

the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed. *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted). Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532, at *4 (S.D. Ala. Mar. 9, 2022).

In first applying the PRT, the ALJ rated Plaintiff as having moderate limitations in the functional areas of "understanding, remembering, or applying information," "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself." (Tr. 17). *See* 20 C.F.R. § 416.920a(c)-(d). As the ALJ explained:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 18). *See* 20 C.F.R. §§ 416.920(a)(4), 416.920a(b)-(d).

In finding at step three that Plaintiff had moderate limitations in "understanding, remembering, or applying information," the ALJ cited that Plaintiff graduated from high school with a regular diploma, that in his function report he answered that he did not know how long he could pay attention, he described his ability to follow written instructions as "I'm ok," and he

described his ability to follow spoken instructions as "good," and that in a third-party function report, Plaintiff's mother indicated that he had problems with memory, completing tasks, concentrating, understanding, and following instructions, and that his mother indicted that she managed Plaintiff's money because of his lack of understanding and that Plaintiff had never had a checking account.  (Tr. 17, 287, 289, 298, 313, 315).  As to "interacting with others," the ALJ noted that in Plaintiff's function report he identified no specific problems with getting along with others, that he shopped but did not know what for, how often, or how long, that he spent time with others in person by hanging out and having fun but that he did not know how often he did these things, and that he attended church on a regular basis but did not know how often he took part. (Tr. 17, 296-98).  The ALJ also noted that in a third-party function report Plaintiff's mother indicated that Plaintiff had no problems with getting along with others, that he engaged with others in person and on the phone by playing pool, watching TV, and shopping, and that he attended church, went grocery shopping, and visited family on a regular basis.  (Tr. 17, 288-89, 314-15).

With respect to "concentrating, persisting, or maintaining pace," the ALJ noted that Plaintiff stated in his function report that he did not handle stress well and that he did not know how he handled changes in routine.  (Tr. 17, 299).  In considering the third-party function report by Plaintiff's mother, the ALJ noted that Plaintiff's mother reported that he had problems with memory, completing tasks, concentrating, understanding, and following instructions.  (Tr. 17, 289, 315).  As for adapting or managing oneself, the ALJ considered that Plaintiff's varied social interactions with family demonstrated his ability to appropriately interact with others, that he played basketball and football "every now and then," and that his mother reported that he started hearing voices, which occupied his thoughts, and that he was not focusing.  (Tr. 17-18, 290, 297, 316).

In addition to the foregoing, the ALJ noted Dr. Clark's September 29, 2021 psychological examination which showed that Plaintiff was alert and oriented to person, place, and time, that he had grossly logical thought content with no overt psychotic intrusion, that he had an "okay" mood, that he had grossly intact judgment, that no manic activity was present, and that he had no overt psychotic intrusion.  (Tr. 21, 576-77).  The ALJ also noted that Dr. Clark's notes indicated that Plaintiff reported he was able to perform his personal activities of daily living without assistance and had studied therapeutic massage at Virginia College, although he did not complete a degree. (Tr. 21, 575-76).  The ALJ further considered treatment records that showed good symptom management and control with medication compliance.  (Tr. 21, 542, 546, 557, 559, 561).  In April and July 2021, Plaintiff was described as "doing good" and tolerating medications without side effects.  (Tr. 21, 22, 557, 561).  The ALJ further noted that the State agency psychological consultants found no more than moderate limitations in functioning.  (Tr. 22, 65, 92).

Accounting for the PRT findings, the ALJ limited Plaintiff to "the performance of simple tasks," "frequent interaction with the supervisor and frequent public interaction," "occasional changes in a routine work setting," and "no production rate pace jobs such as assembly line work but can perform goal-oriented work such as that of an office cleaner." (Tr. 18).  Plaintiff argues that his schizophrenia and intellectual impairments limit him significantly more in the four paragraph "B" general areas than found by the ALJ and that the ALJ's mental RFC did not account for any of the associated specific mental work-related activities.  (Doc. 16 at pp. 6, 10).

As to the ALJ's limitation to "simple tasks" to address Plaintiff's moderate limitations in the area of "understanding, remembering, or applying information," Plaintiff argues that this broad limitation does not address his profound limitations in his ability to: understand and learn terms,

procedures or instructions; follow one-or-two step oral instructions; provide explanations; or answer questions.[6]  (*Id*. at p. 6).  In support, Plaintiff cites a June 2017 psychiatric admission where treating sources noted that he had poor cognitive skills consistent with an intellectual disability. (*Id*. at p. 7; Tr. 369, 385, 393).  Plaintiff also cites the November 29, 2017 examination by psychologist Warren G. Brantley, Ph.D., who opined that Plaintiff's responses were "consistent with extreme upper borderline or low average intellectual functioning; 85 to 90 [IQ] in all likelihood."  (*Id*.; Tr. 427).  Dr. Brantley reported that Plaintiff "demonstrate[d] simple concrete thinking," and that Plaintiff did not know the names of the governor of Alabama or the mayor of Montgomery or how many days or weeks there were in a year.  (Tr. 427).  Plaintiff also cites the September 29, 2021 examination of Daniel Clark, Ph.D., who found that Plaintiff's recent and remote memory were poor (Tr. 577), and Plaintiff's mother who stated in a third-party function report that she needed to monitor Plaintiff's medications and remind him to do household chores (Tr. 286, 312; Doc. 16 at p. 7).

Plaintiff further asserts that his answers on State agency forms, such as "don't know" to questions as to "how his impairment limited his ability to work; how often and how long it took to prepare meals; what he shopped for and how long it took; if he needed to be reminded to go places; and how long he could pay attention," were illustrative as to his impairment in his ability to provide explanation or answer questions.  (*Id*. at p. 7; Tr. 292, 295-98).  Similarly, Plaintiff cites his hearing testimony where he answered that he did not know how long he continued to hear

---

[6] "Understand, remember, or apply information (paragraph B1). This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(E)(1).

whispers, "the name of his medication (Haldol), or what it was for (psychotic symptoms)," and "how many times he saw the psychiatric nurse practitioner." (*Id*. at p. 7; Tr. 37-39).

As an initial matter, treatment records from 2017 are three years before the alleged onset date of July 31, 2020 and outside the relevant period.  Moreover, in addressing Dr. Brantley's opinion, the ALJ stated:

> However, in consideration of probable borderline intellectual functioning (BIF), the records are not supportive of this condition resulting in no more functional limitations than those assessed in the residual functional capacity assessment. Dr. Brantley diagnosed probable upper range of BIF.  Dr. Brantley indicated that IQ testing results were invalid due to intermittent faking and purposeful failure. He indicated no confirmation of a significant intellectual deficiency. There were no significant symptoms during examination.

(Tr. 21-22, 427).  The ALJ also noted that Dr. Clark found a mild range of intellectual disability to the lower borderline range of intellectual functioning, that "[i]t [was] not mentioned as a diagnosis in mental health treatment records," and that Plaintiff neither alleged it on his disability application nor reported significant limitations related to such during the hearing—as Plaintiff indicated that he was attending college but only needed help with computer work.  (Tr. 22, 273-78, 577).

The import of Plaintiff's statements on State agency forms and at the hearing is speculative. The ALJ noted that Plaintiff described his ability to follow written instructions as "I'm ok" and that he described his ability to follow spoken instructions as "good." (Tr. 17, 298).  At the hearing, although Plaintiff could not recall the name of his medication, he knew that he was supposed to take his medication three times a day but stated that he was taking it only once in morning and once in evening and that he took the medication to "[h]elp [him] out with hearing voices." (Tr. 38).  Plaintiff also testified that he heard voices "a little bit" that day but that he did not hear them the day before the hearing.  (Tr. 38).  Plaintiff could further recall that he met with a therapist

often but that it was less than once a week.  (Tr. 38-39).

As to the ALJ's limitation to "frequent interaction tasks" to address Plaintiff's moderate limitation in the area of "interacting with others," Plaintiff argues that this limitation did not address his ability to respond to social cues, initiate or sustain conversation, ask for help, or respond to requests, suggestions, or criticism.[7]  (Doc. 16 at pp. 7-8).  In support, Plaintiff cites Dr. Clark's finding that he presented with a flat affect and monotone speech and Dr. Clark's opinion that he had a marked impairment in his ability to relate to others and sustain a routine without special supervision.  (*Id.* at p. 8; Tr. 576, 578).  As Additional support, Plaintiff cites Dr. Brantley's finding that his judgment and insight were consistent with a mental age of about 15 years and his mother's statement that he could talk to family members but that they had "to communicate with him or he'll just sit there and stare."  (*Id.*; Tr. 285, 311, 427).

In considering Dr. Clark's opinion, the ALJ noted the following:

> The claimant reported that his auditory hallucinations have reportedly abated, except for periodic "whispers" or background noise, with his psychotropic medication regimen, but he continues to exhibit negative symptoms associated with schizophrenia. He had a flat affect and displayed avolition. His speech was monotone in nature. He made poor eye contact and exhibited a dazed, staring facial expression. The mental status examination indicates his stream of thought was noted for mild blocking, and thought content was grossly logical, with no overt psychotic intrusion. His mood was described as "okay." There was no manic activity present and recent stressors were denied. He was alert and oriented to person, place, and time. Dr. Clark indicated intellectual abilities were found to likely fall in the upper mild range of intellectual disability to the low borderline range of intellectual functioning. His [sic] was limited, and his judgment was

_____

[7] "Interact with others (paragraph B2). This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(E)(2).

grossly intact. Dr. Clark found the claimant with "marked" mental limitations and concluded that he would be absent from work more than three days a month. The undersigned finds this opinion, partially persuasive as Dr. Clark's finding of marked limitations are inconsistent with the overall evidence of record, especially treatment records. Specifically, treating records which show good symptom management and control with medication compliance. However, the undersigned finds that the assessment of the upper end of borderline intellectual functioning is more consistent with the overall evidence of record.

(Tr. 21, 542, 546, 557, 559, 561).

In assessing the other opinion evidence, the ALJ noted that the State agency psychologists found no more than moderate limitation in functioning. (Tr. 22, 56-76, 80-102). As to Dr. Brantley's opinion, the ALJ noted the following:

Dr. Brantley did not specifically address functional limitations but noted that he is stable at the present level of functioning. The claimant reported to Dr. Brantley that he has a laptop, access to Facebook and Messenger, plays cards with a neighbor and friends, he does indoor and outdoor chores, socializes with family, goes for walks and goes to and watches sporting events. He noted his psychosis is controlled with medication. This is consistent with treatment records that reflect stabilization and improvement with medi[c]ation compliance. In addition, treatment records describe him as doing good with medi[c]ation and a tolerance of medication with no side effects.

(Tr. 22, 426-28).

Additionally, and as stated previously, in finding that Plaintiff had moderate limitations in interacting with others, the ALJ noted that in Plaintiff's function report he indicated that he had no specific problems getting along with others, that he shopped, that he spent time with others in person by hanging out and having fun, and that he attended church on a regular basis. (Tr. 17, 296-98). The ALJ also noted that Plaintiff's mother indicated in a third-party function report that Plaintiff had no problems with getting along with others, that he engaged with others in person and on the phone by playing pool, watching TV, and shopping, and that he attended church, went grocery shopping, and visited family on a regular basis. (Tr. 17, 288-89, 314-15).

With regard to the ALJ's limitation to "no production rate pace jobs such as assembly line work but can perform goal-oriented work" to address Plaintiff's moderate limitation in the area of "concentrating, persisting, or maintaining pace," Plaintiff argues that the limitation did not address his ability to attend or concentrate for extended periods, initiate and perform known tasks, perform activities within a schedule, maintain regular attendance, work at an appropriate pace, ignore or avoid distractions, and work close to or with others without interrupting or being distracting.[8] (Doc. 16 at p. 8).  In support of his argument, Plaintiff cites Dr. Clark's opinion that as a result of "schizophrenia and lack of focus on interpersonal interactions" Plaintiff would likely be off-task 11%-15% of the day and Dr. Clark's observation that he "displayed avolition." (*Id*.; Tr. 576, 579). Plaintiff also cites Dr. Brantley's opinion that he would "benefit from case management services," that he could work part-time with appropriate support services in place," and that there appeared "to be need for assistance, care and supervision." (*Id*.; Tr. 427-28).  In addition, Plaintiff cites his mother who stated that he hears voices, stares, walks slowly, talks slowly, has trouble concentrating, with seemingly "occupied thoughts," and abandons tasks, often forgetting to complete them. (*Id*.; Tr. 289-90, 315-16).

As stated previously, the ALJ found that Dr. Clark's opinion was inconsistent with the overall evidence of record, especially treatment records that showed good symptom management

---

[8] "Concentrate, persist, or maintain pace (paragraph B3). This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(E)(3).

and control with medication compliance.  (Tr. 21, 542, 546, 557, 559, 561).  The ALJ noted that

the mental status examination indicated that Plaintiff's stream of thought was noted for mild

blocking and thought content was grossly logical with no overt psychotic intrusion, that his mood

was described as "okay," that there was no manic activity present and recent stressors were denied,

that he was alert and oriented to person, place, and time, and that his judgment was grossly intact.

(Tr. 21).  Likewise, the ALJ noted that Dr. Brantley reported that Plaintiff was stable at the present

level of functioning, socialized with a neighbor, friends, and family, and did indoor and outdoor

chores.  (Tr. 22).  The ALJ stated that treatment records reflected stabilization and improvement

with medication compliance with no side effects.  (Tr. 22).  The ALJ also considered the opinions

of the State agency psychological consultants, who determined that Plaintiff could perform work-

related duties with no more than moderate limitations but, based on the overall evidence of record,

added an additional limitation of no production rate paced jobs.  (Tr. 22).  Further, the ALJ

considered the examination by Dianne Smith, RN, who reported, in part, the following:

> He reported residual hallucinations that were not distressing and controllable, citing
> that he will always hear them but knows how to make them go away.  He denied
> symptoms of mania and hypomania. His speech was normal for rate and
> articulation; mood was euthymic; thought process was linear and goal directed with
> no flight of ideas, perseverations, loosening of association, tangentiality, or
> circumstantiality. Thought content showed no evidence of paranoia, delusional
> ideations, responses to internal stimuli, or audio/visual hallucinations.  He was alert
> and fully oriented and presently able to weigh risks/benefits and report changes in
> mental status.

(Tr. 20, 557, 559) (emphasis omitted).

Lastly, as to the ALJ's limitation to "occasional changes in a routine work setting" to

address Plaintiff's moderate limitation in the area of "adapting or managing oneself," Plaintiff

argues that the limitation did not address his ability to respond to customary work-place demands,

manage his schizophrenia-related symptoms, make personal plans independently, identify

acceptable versus unacceptable work performance, or maintain personal hygiene.[9] (Doc. 16 at p. 9). In support, Plaintiff cites his mother's statements that she does not let him go out alone often because he gets "confused on how to get back home," that he does not care to drive because he may get loss, that he is unable to pay bills or use checkbook/money orders, resists bathing and changing his clothes, and requires prodding from others, and that he needs to be reminded to do chores. (*Id.*; Tr. 286-87, 311-13). Plaintiff also cites his past relevant work history, which only consisted of part-time work. (*Id.*; Tr. 36-37, 39). Plaintiff further asserts that his inability to attend to his psychiatric symptoms is demonstrated by his need for medication assistance and his inability to effectively participate in seeking SSI benefits, such as his hanging up on a State agency representative in July 2021 after the agent identified herself and told him why she was calling, his lack of useful responses on State agency forms and at the hearing, and Dr. Brantley's conclusion that he did "not present as being able to independently meet his own needs" due to cognitive diminishment and lack of experience along with paranoid psychosis. (*Id.*, citing Tr. 36-41, 292-300, 338, 427). The court has already addressed all such assertions.

Disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "[A] physical or mental impairment must be established

---

[9] "Adapt or manage oneself (paragraph B4). This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(E)(4).

by objective medical evidence from an acceptable medical source. [The Agency] will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 416.921.  Moreover, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."  *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)); *Crans v. Berryhill*, No. 3:16-CV-914, 2017 WL 4683933 at *5  (M.D. Ala. Oct. 18, 2017) ("[T]he mere diagnosis of [a condition] says nothing about the severity of the condition.") (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)); *see also* 20 C.F.R. §§ 416.920(c), 416.905(a).[10]  The burden of proving an impairment is upon the plaintiff.  *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

Based upon the evidence as a whole, the court concludes that the ALJ's PRT findings were supported by substantial evidence.  The ALJ's analysis was sufficient to support the conclusion that Plaintiff's severe impairments did produce limitations, that those limitations were moderate, and that the RFC determination adequately accounted for the limitations.  The ALJ's conclusions were based upon the entire evidence.  The evidence to which Plaintiff cites does not undermine the ALJ's determination.  Plaintiff "'must do more than point to evidence in the record that supports h[is] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion.'"  *Thompkins v. Kijakazi*, No. 2:21-CV-216, 2022 WL 2517185 at *7 (M.D. Ala. July 6, 2022) (quoting *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017)

---

[10] Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting."  20 CFR § 416.922(b).

(per curiam)) (brackets added). "The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence." *Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619 at *1 (S.D. Ga. June 9, 2015) (citing *Crawford*, 363 F.3d at 1158-59); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion. The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted). Put most simply, "[t]o the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679 at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

### B.   Consideration of Statements from Dr. Clark, Dr. Brantley, and Dr. Lucas

Plaintiff argues that the ALJ did not properly consider the statements of Dr. Clark, Dr. Brantley, and Dr. Lucas when assessing his RFC. (Doc. 16 at p. 10). In response, the Commissioner contends that the ALJ properly applied the regulations in evaluating all opinion evidence. (Doc. 17 at p. 8).

Because Plaintiff's claim was filed on July 31, 2020 (Tr. 14), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The revised regulations no longer use

the phrase "treating source" but instead use "your medical source(s)."  *See* 20 C.F.R. § 404.1520c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309 at *5 (N.D. Ala. July 22, 2021).  For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. § 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022).  "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)."  *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(b)).  Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources."  *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618 at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 416.920c(a), (c).  "The most important factors … [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency."  20 C.F.R. § 416.920c(a), (b)(2); *Simon*, 2021 WL 4237618 at *3.  Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors."  *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296 at *4 (M.D. Fla. Apr. 14, 2022).  "The ALJ

must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)). "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156 at *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050 at *3 (M.D. Ala. June 23, 2022). Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); 20 C.F.R. § 416.920c(b)(2). And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 416.920c(d). Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ... Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218 at *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

### 1.    Daniel C. Clark, Ph.D.

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Dr. Clark, as it was supported by his mental status examination (MSE) findings and was consistent with the remainder of the record. (Doc. 16 at pp. 10-11). Plaintiff cites Dr. Clark's examination findings and medical source statement that he reported that with his psychotropic medication regimen his auditory hallucinations had abated except for periodic "whispers" or "background noise," that he was diagnosed with schizophrenia, and that he had marked impairments in his ability to relate to others, to maintain concentration, pace and attention for at least 2 hours, to sustain a routine without special supervision, to respond to customary work pressures, to behave in an emotionally stable

manner, and to perform activities within a schedule, maintaining regular and punctual attendance. (*Id*. at p. 10; Tr. 576, 578-79).  Plaintiff also cites Dr. Clark's finding that because of "negative symptoms of schizophrenia and lack of focus on interpersonal interactions or task at hand," he would likely be frequently off-task 11%-15% of the day or need unscheduled breaks.  (*Id*., Tr. 579).  Plaintiff asserts that Dr. Clark's opinion was supported by his MSE findings: despite medication management Plaintiff "continue[d] to exhibit negative symptoms associated with schizophrenia;" he had a flat affect, monotone speech, poor eye contact, and "a dazed, staring facial expression;" he displayed avolition; and his stream of thought was noted for mild blocking. (*Id*. at p. 11; Tr. 576).  Plaintiff also asserts that Dr. Clark noted that signs of Plaintiff's depression included diminished interest in activities and a flat affect and that Plaintiff's immediate memory was good but his recent and remote memory were poor.  (Tr. *Id*., 576-77).

In discussing the supportability factor, the ALJ stated that Dr. Clark's psychological examination revealed that Plaintiff reported that he was able to perform his personal activities of daily living without assistance, that he not only completed high school but also studied therapeutic massage at Virginia College but did not complete a degree, that he was alert and oriented to person, place, and time, that his thought content was grossly logical with no overt psychotic intrusion, that he had an "okay" mood, that there was no manic activity present, and that his judgment was grossly intact.  (Tr. 21, 575-77).  As to the consistency factor, the ALJ found that Dr. Clark's opinion was not consistent with the State agency psychological consultants, who found no more than moderate limitations in functioning (Tr. 22, 65, 92) and that Dr. Clark's opinion of marked mental limitations was inconsistent with the overall evidence of record, especially treatment records, which showed good symptom management and control with medication compliance (Tr. 21-22, 542, 546, 557,

559, 561).[11]

Based on the record, the court concludes that the ALJ properly evaluated the opinion evidence according to the regulations and did not commit reversible error.

### 2.   Warren G. Brantley, Ph.D.

As to his contention that the ALJ did not properly evaluate Dr. Brantley's opinion, Plaintiff argues that Dr. Brantley concluded that "Mr. Chester would be unable to perform full-time competitive work," finding that Plaintiff "does not present as being able to independently meet his own needs presently, both due to cognitive diminishment and due to lack of experience, along with paranoid psychosis."  (Doc. 16 at p. 11; Tr. 427).  However, a statement as to whether Plaintiff could perform full-time competitive work was an issue reserved to the Commissioner and was not entitled to any weight.  *Flores v. Kijakazi*, No. 8:22-CV-958, 2023 WL 6782270 at *12 (M.D. Fla. Aug. 14, 2023), *report and recommendation adopted*, No. 8:22-CV-958, 2023 WL 5697385 (M.D. Fla. Sept. 5, 2023) ("Courts in this circuit have held similar statements regarding a claimant's capacity to work a full week or within a competitive work environment are considered statements on issues reserved to the Commissioner."); *Romeo v. Comm'r of Soc. Sec.*, 686 F. App'x 731, 733 (11th Cir. 2017); *Ring v. Berryhill*, No. 3:17-CV-1088, 2018 WL 11431661 at *2 (M.D. Fla. June 13, 2018) (holding that the statement that claimant "could not sustain full or part-time employment, was on an issue reserved to the Commissioner and could be discounted on that basis").  "A statement by a medical source that [the claimant is] 'disabled' or 'unable to work'

---

[11] Plaintiff asserts that the State agency psychologists did not have the complete psychiatric record but that Dr. Clark reviewed all psychiatric treatment and examination records, citing Dr. Clark's review of Crossbridge Behavioral Health hospitalization records from June 2017 and August 2020 (Tr.356-413; Tr. 457-522), the November 29, 2017, consultative examination by Dr. Brantley (Tr. 425-28),  and outpatient mental health records (Tr. 414-24, Tr. 429-444, Tr. 526-562). (Doc. 16 at p. 11 n.9).  However, the record reflects that the State agency psychologists reviewed many of these same records.  (Tr. 52-54, 56-64, 89-90).

does not mean that [the agency] will determine that [the claimant is] disabled." 20 C.F.R. § 416.927(d)(1); 20 C.F.R. § 416.920b(c)(3) ("[W]e are responsible for making the determination or decision about whether you are disabled"). '[T]he ALJ is not required to provide any discussion or analysis of evidence that is 'inherently neither valuable nor persuasive,' which includes statements on issues reserved to the Commissioner, such as statements that an applicant is or is not disabled or able to work; statements about whether or not an impairment is severe; and statements about whether or not an impairment meets or medically equals a listing in the Listing of Impairments." *Richard B. v. Kijakazi*, No. 1:21-CV-00972, 2022 WL 16709174 at *11 (N.D. Ga. Sept. 19, 2022) (citations omitted). *See* 20 C.F.R. § 416.920b(c) (The regulations expressly provide that the agency "will not provide any analysis about how [it] consider[s] such evidence" because it "is inherently neither valuable nor persuasive to the issue of whether [the claimant is] disabled … under the Act."). Thus, the ALJ was not required to evaluate Dr. Brantley's statement for its persuasiveness because the statement was on an issue reserved to the Commissioner.

Moreover, in evaluating Dr. Brantley's opinions, the ALJ noted that Dr. Brantley diagnosed probable upper range of BIF, that he indicated IQ testing results were invalid due to intermittent faking and purposeful failure, and that he indicated no confirmation of a significant intellectual deficiency. (Tr. 21-22, 427-28). The ALJ also noted that there were not any significant symptoms during the examination. (Tr. 22). In addition, the ALJ noted that Dr. Brantley reported that Plaintiff was stable at the present level of functioning and that his psychosis was controlled with medication, which was consistent with treatment records that reflected stabilization and improvement with medication compliance. (Tr. 22, 427-28).

Based upon the foregoing, the court concludes that the ALJ's evaluation of Dr. Brantley's opinion was supported by substantial evidence.

3.    **Joseph Lucas, M.D.**

Plaintiff asserts that the ALJ did not properly consider Dr. Lucas's finding that he lacked

the mental ability to manage benefits in his own best interest.  (Doc. 16 at p. 12; Tr. 525).  However,

Dr. Lucas did not offer a medical opinion that the ALJ was required to evaluate.  Under the revised

regulations, the term "medical opinion" is defined as follows:

> A medical opinion is a statement from a medical source about what you can still do
> despite your impairment(s) and whether you have one or more impairment-related
> limitations or restrictions in the following abilities: . . .

>> (i) Your ability to perform physical demands of work activities, such
>> as sitting, standing, walking, lifting, carrying, pushing, pulling, or
>> other physical functions (including manipulative or postural
>> functions, such as reaching, handling, stooping, or crouching);

>> (ii) Your ability to perform mental demands of work activities, such
>> as understanding; remembering; maintaining concentration,
>> persistence, or pace; carrying out instructions; or responding
>> appropriately to supervision, co-workers, or work pressures in a
>> work setting;

>> (iii) Your ability to perform other demands of work, such as seeing,
>> hearing, or using other senses; and

>> (iv) Your ability to adapt to environmental conditions, such as
>> temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2).  Here, Dr. Lucas completed a check box form indicating that Plaintiff

was not capable of managing or directing the management of benefits in his own best interest.

(Tr. 525).  Such a statement does not assess the extent to which Plaintiff can perform any

particular function in a work setting and therefore would not constitute a "medical opinion" under

the regulations so as to require a specific articulation of consideration and persuasiveness.

20 C.F.R. § 416.913(a)(2); *Maguire v. Saul*, No. 8:20-cv-710, 2021 WL 2284463 at *3 (M.D. Fla.

June 4, 2021) (noting that a statement by Dr. Singh "that, if plaintiff were entitled to benefits, she

would not be capable of managing those funds" was "not a medical opinion regarding her ability

to work").   In considering the statement, the ALJ noted that Dr. Lucas failed to provide a brief summary of his conclusion despite being directed to do so in the event of answering "no" and that there was not a functional assessment in vocational terms.   (Tr. 21).   The ALJ did not commit reversible error.

Again, it is the ALJ—not a doctor—who has the duty to determine a claimant's RFC. *Moore*, 649 F. App'x at 945.   Thus, an ALJ "is not required to base[] [the] RFC on a doctor's opinion."   *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190 at *6 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014)); *Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775 at *2 (M.D. Ala. Oct. 19, 2022) ("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation and internal quotation marks omitted).   While state agency medical or psychological consultants are considered experts in Social Security disability evaluation, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider this evidence according to §§ 416.920b, 416.920c, and 416.927, as appropriate."   20 C.F.R. § 416.913a(b)(1).   The regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."   20 C.F.R. § 416.920c(a).   "Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive." *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076, 2021 WL 2417084 at *2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775 at *3 ("Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may be appropriate.").

27

*See also Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443 at *9 n.12 (M.D. Fla. Nov. 28, 2022) (collecting cases).  Nor is an ALJ "compelled to 'specifically refer to every piece of evidence in his decision.'"  *Szoke*, No. 8:21-CV-502, 2022 WL 17249443 at *9 (citation omitted).

The ALJ was under no obligation to adopt every part of the opinions of the examining and non-examining doctors.  "The regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive."  *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL 8211404 at *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).  *See also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108, 2019 WL 4686800 at *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source ... because the responsibility of assessing the RFC rests with the ALJ."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646 at *2 (M.D. Ala. Sept. 29, 2022) ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell v. Kijakazi*, No. CV 321-066, 2022 WL 4000719 at *5 (S.D. Ga. Aug. 9, 2022), *report and recommendation adopted*, No. CV 321-066, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."); *Williamson*, 2022 WL 2257050 at *3.

In sum, the ALJ sufficiently considered the supportability and consistency of the opinions under 20 C.F.R. § 416.920c and considered the record as a whole in determining Plaintiff's RFC.

### C.      Evaluation of Plaintiff's Subjective Statements

Plaintiff contends that his illness prevented him from articulating his symptoms and limitations.  (Doc. 16 at p. 12).  In support, Plaintiff again relies on the opinions of Dr. Clark and Dr. Brantley, Plaintiff's mother's statements, and his statements to the State agency.  (*Id*. at pp. 12-16).  The court has already addressed much of these same arguments.

In determining whether a claimant is disabled, the claimant's symptoms, including pain, are considered to the extent that they are reasonably consistent with objective medical evidence and other evidence.  20 C.F.R. § 416.929(a).  The Commissioner will consider a claimant's statements about his or her symptoms and any description that claimant's medical sources or nonmedical sources may provide about how the symptoms affect the claimant's activities of daily living and ability to work.  *Id*.  However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.  *Id*.; SSR 16-3p, 2017 WL 5180304 at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596 at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms.").  The regulations set out a two-step process for the evaluation of subjective complaints.  *Id*.; SSR 16-3p, 2017 WL 5180304 at *3.  To establish a disability based on testimony of symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms.  *Carroll v. Soc. Sec. Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503 at *12 (N.D. Ala. Aug. 29, 2022) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); 20 C.F.R. § 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304 at *3.

"Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964 at *3 (M.D. Fla. July 19, 2022); 20 C.F.R. § 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304 at *2-3.  Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work.  SSR 16-3p, 2017 WL 5180304 at *3-4; 20 C.F.R. § 416.929(a)-(c); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL 1205347 at *5 (N.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, No. 3:21-CV-908, 2022 WL 1204519 (N.D. Fla. Apr. 22, 2022).  In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304 at *8-9; 20 C.F.R. § 404.1529(c)(3).

The ALJ will also consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant.  20 C.F.R. § 416.929(c)(4). "However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every

decision." *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-01862, 2022 WL 4291335 at

*5 (N.D. Ala. Sept. 16, 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)

(concluding that the ALJ need not cite to "particular phrases or formulations" but must provide

reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's

medical condition as a whole). If the ALJ discredits a claimant's subjective statements, the ALJ

"must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62; *Patterson

v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058 at *3 (M.D. Fla. Aug. 1, 2022). That is, "[w]here

proof of a disability is based upon subjective evidence and a credibility determination is a critical

factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms,

the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion

must be so clear as to amount to a specific credibility finding." *Martinez v. Comm'r of Soc. Sec.*,

No. 21-12116, 2022 WL 1531582 at *2 (11th Cir. May 16, 2022) (citing *Foote*, 67 F.3d at 1562).

"Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-

277, 2022 WL 736260, at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell*, 771 F.3d at 782).

Here, the record reflects that the ALJ sufficiently addressed Plaintiff's subjective

statements in accordance with the regulations. In determining Plaintiff's RFC, the ALJ stated:

> In making this finding, the undersigned has considered all symptoms and the extent
> to which these symptoms can reasonably be accepted as consistent with the
> objective medical evidence and other evidence, based on the requirements of
> 20 CFR 416.929 and SSR 16-3p. The undersigned also considered the medical
> opinion(s) and prior administrative medical finding(s) in accordance with the
> requirements of 20 CFR 416.920c.

(Tr. 18). As for Plaintiff's statements about the intensity, persistence, and limiting effects of his

symptoms, the ALJ found that they were inconsistent with the medical evidence of record.

(Tr. 19). The ALJ stated:

31

In particular, the medical evidence of record documents a history of outpatient mental health treatment with Montgomery Area Mental Health for schizophrenia with a regimen of psychotropic medications (B2F, B4F, B8F-B9F). Those records show good symptom management and control with medication compliance and individual therapy (B2F, B4F). Specifically, the undersigned notes that a progress note from a December 19, 2018, visit indicates the claimant reported he was doing good and denied any problems with mood, thought, or behavior. He reported spending time watching television and denied any medication side effects. Although his affect was constricted, he was alert and oriented with no psychomotor agitation, no delusions or hallucinations, no looseness of associations, and no flight of ideas (B4F/13). Although outside the period at issue, the undersigned references this to show the improvement with medication compliance.

Thereafter, consistent with the relevant time period, the medical evidence of record documents continued outpatient mental health treatment with Montgomery Area Mental Health (B8F-B9F). The claimant presented for telehealth on September 8, 2020, to update his intake and continue services. He reported that he was recently in Crossbridge and treated with a regimen of prescription medications, which he acknowledged were helpful in management of his symptoms (B8F/5). He reported no suicidal/homicidal ideation, history of abuse, aggression, or substance abuse. He reported no delusions, hallucinations, disorganized speech, catatonic behavior, negative symptoms, or loose associations (B8F/4). The mental status examination showed the claimant with normal range and modulation of speech, cooperative behavior, euthymic affect, alert/awake consciousness, no abnormal thought content, intact judgment, recent and remote memory, and the claimant oriented to person, place, time, and situation. Notes further indicate the claimant was compliant with treatment (B8F/11-12). The claimant was diagnosed with schizophrenia, unspecified (B8F/13).

A telehealth physician follow-up on September 14, 2020, indicates the claimant was last seen a year previous. He reported that he had been hearing voices lately but that they were starting to fade away. Interestingly, he reported that he needed to restart his medications. His speech was normal for rate and articulation; mood was euthymic; thought process was linear and goal directed with no flight of ideas, loosening of association, tangentiality, or circumstantiality. Thought content was positive for audio hallucination, but he was alert and fully oriented with fair insight and judgment. The claimant was restarted on prescription medication Haldol (B8F/15). Subsequent follow-up shows decrease in voices with medication compliance and denial of side effects (B8F/17). Of note, a telehealth note from October 23, 2020, indicates the claimant's mother reported continued symptom improvement, management, and control with medication compliance, with denial of any problems with paranoia, delusions, or audio/visual hallucinations (B8F/19). Subsequent follow up on November 16, 2020, shows continued decrease of voices and compliance with prescription medications, Haldol, Cogentin, and Buspar (B8F/21).

Most current outpatient mental health treatment with Dianne Smith, RN (Registered Nurse with Master's in Psychiatric Nursing) shows continual improvement. A telehealth appointment on April 22, 2021, *continues to show the claimant compliant with medications as prescribed and tolerating them well without any side effects. He denied acute or worsening psychosis, thought disturbances, behaviors, or moods swings. He reported residual hallucinations that were not distressing and controllable, citing that he will always hear them but knows how to make them go away. He denied symptoms of mania and hypomania. His speech was normal for rate and articulation; mood was euthymic; thought process was linear and goal directed with no flight of ideas, perseverations, loosening of association, tangentiality, or circumstantiality. Thought content showed no evidence of paranoia, delusional ideations, responses to internal stimuli, or audio/visual hallucinations. He was alert and fully oriented and presently able to weigh risks/benefits and report changes in mental status.* The claimant was assessed with chronic schizophrenia, undifferentiated (B9F/3, 5). Most current follow-up on July 22, 2021, continues to show the claimant compliant with medications and doing good with symptom management and control (B9F/7).

(Tr. 19-21) (emphasis in original).

The ALJ considered the opinions of Dr. Clark and Dr. Brantley and gave the opinions varying degrees of persuasiveness.  For instance, the ALJ noted that Dr. Clark's psychological examination showed that Plaintiff was alert and oriented to person, place, and time, that he had grossly logical thought content with no overt psychotic intrusion, that he had an "okay" mood, that he had grossly intact judgment, that there was no manic activity present, and that there was no overt psychotic intrusion.  (Tr. 21, 573-79).  The ALJ noted that Dr. Brantley diagnosed Plaintiff with probable upper range of BIF and that he indicated that IQ testing results were invalid due to intermittent faking and purposeful failure.  (Tr. 21-22).  The ALJ further noted that Dr. Brantley reported that Plaintiff was stable at the present level of functioning, that Plaintiff had a laptop, that he had access to Facebook and Messenger, that he played cards with a neighbor and friends, that he did indoor and outdoor chores, that he socialized with family, that he went for walks and attended sporting events, and that his psychosis was controlled with medication.  (Tr. 22).  As to the opinions of the State agency psychological consultants, the ALJ considered their determination

that Plaintiff could perform work-related duties with no more than moderate limitations.  (Tr. 22).

The ALJ also considered Plaintiff's activities of daily living.  The ALJ considered that Plaintiff attended church on a regular basis and engaged with others in person by playing basketball, football, and pool.  (Tr. 17, 288, 297).  The ALJ noted that Plaintiff had no problem getting along with others.  (Tr. 17, 290).  The ALJ further noted that Plaintiff shopped in stores, visited with family, watched television, prepared his own meals, and performed indoor and outdoor chores.  (Tr. 17, 19, 22, 287-88, 312).  *See* 20 C.F.R. § 416.929(c)(3)(i) (stating that an ALJ should consider a claimant's daily activities in evaluating the limiting effects of the claimant's impairments and related symptoms).

Plaintiff takes issue with the ALJ's references to his improvement with medication compliance and asserts that "'non-compliance' is a symptom of his mental illness, not the cause," and that the Commissioner is to consider the possible reasons for a claimant's noncompliance with treatment.  (Doc. 16 at p. 15).  The Eleventh Circuit has stated that when an ALJ "'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration.  However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) (citations omitted); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).  Pursuant to the regulations, an ALJ may consider "[t]he type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms."  20 C.F.R. § 416.929(c)(3)(iv).

The ALJ mentioned Plaintiff's improvement with medication compliance.  The ALJ did not deny benefits for noncompliance with medication.  Instead, the ALJ simply considered

Plaintiff's medication compliance as a factor in weighing the credibility of Plaintiff's subjective statements. *See Ogletree v. Colvin*, No. 5:12-CV-389, 2013 WL 6169161 at *10 (M.D. Ga. Nov. 25, 2013) (finding that the plaintiff was not denied benefits for "failure to follow treatment" where the ALJ properly considered the plaintiff's non-compliance with her therapeutic and pharmacological regimens as a factor in assessing the credibility of her testimony). A review of the ALJ's decision reflects that the ALJ considered the entire record, which included the ALJ's thorough discussion of the objective medical evidence, the function reports, opinion testimony, and Plaintiff's activities of daily living. Because those reasons are not based on Plaintiff's noncompliance with medication, the court concludes that the ALJ did not rely "primarily if not exclusively" on Plaintiff's noncompliance to discount his subjective statements.

"[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms." *Turner*, 2021 WL 3276596 at *9; 20 C.F.R. § 416.929(a) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [a claimant is] disabled."). The court finds that the ALJ properly evaluated Plaintiff's subjective complaints in light of the evidence of record and formulated appropriate RFC restrictions to accommodate the limitations arising from his mental impairments. Credibility determinations are the province of the ALJ, *Mitchell*, 771 F.3d at 782, and the ALJ sufficiently cited evidence in the record for finding that Plaintiff's statements were not entirely consistent with the record as a whole. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (footnote omitted) (The appropriate question for a reviewing court "is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

In conclusion, the record shows that the ALJ properly considered the entire administrative record in evaluating the consistency of Plaintiff's statements and adequately articulated reasons

for finding Plaintiff's statements to be inconsistent with the record.  While Plaintiff may cite to some evidence that the ALJ did not specifically discuss, nothing requires the ALJ to discuss every piece of evidence so long as substantial evidence supports the ALJ's decision. *See Coley*, 771 F. App'x at 917; *Dyer*, 395 F.3d at 1211; *Gogel*, 2021 WL 4261218, at *9; *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) ("Simply because the ALJ chose not to adopt further limitations on Mr. Carson's ability to walk or stand, does not mean the ALJ did not properly consider the alleged limitations.").  Further, while Plaintiff cites evidence that he believes supports his subjective complaints or contradicts the ALJ's assessment (Doc. 16 at pp. 12-16), that is not enough to obtain a remand when, as here, substantial evidence supports the ALJ's decision.  *Crawford*, 363 F.3d at 1158-59; *Mitchell*, 771 F.3d at 782.

## V.     Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 16) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 17) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 13th day of November 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**